# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Paul David Tint, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:15-1996-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on February 9, 2016, recommending that the Commissioner's decision be affirmed. (Dkt. No. 15). Plaintiff timely filed objections to the R & R, arguing that the Commissioner failed to give proper weight to the opinions of his treating specialist physician, Dr. Rhett Myers, as required under the Treating Physician Rule. The Commissioner filed a response, arguing that there is sufficient evidence in the record to support the decision of the Administrative Law Judge ("ALJ"). (Dkt. No. 19). For reasons set forth below, the Court reverses the decision of the Commissioner and remands to the matter to the agency for further action consistent with this order.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1527(b). Known popularly as the "Treating Physician Rule," the regulation requires the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh *all* medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996).

## Discussion

Plaintiff's claim for disability is based upon a combination of various physical and mental impairments, with an alleged onset date of June 9, 2011. Tr. 10. The ALJ found that Plaintiff

has severe physical impairments, including chronic obstructive pulmonary disease ("COPD"), emphysema, and chostochondritis. Tr. 12. The ALJ found that the chostochondritis limited Plaintiff to light work. Tr. 15. Plaintiff does not contest the ALJ's findings regarding his physical impairments.

The ALJ also found that Plaintiff suffered from severe mental impairments, including depression, anxiety, and panic attacks. Tr. 12. These findings are supported by records from Plaintiff's treating psychiatrist, Dr. Myers, and a treating internist, Dr. Scott Weikle. The record indicates Dr. Weikle treated Plaintiff from March 2009 until October 2009, and Dr. Myers treated Plaintiff from July 2011 until September 2013. Tr. 358-9, 361, 363, 365, 366-7, 368-9, 370, 448, 449, 450, 451-2, 453, 454, 456, 458. The ALJ concluded that with an accommodation for Plaintiff's mental impairments (limiting him to work involving "simple, routine, repetitive tasks"), he was not disabled under the Social Security Act. Tr. 15.

The heart of the dispute on appeal concerns the ALJ's evaluation and weighing of the opinions of a treating physician, Dr. Myers, a board certified psychiatrist. Under the Treating Physician Rule, such an opinion is normally given the greatest weight. The record contains Dr. Myers' office records as well as responses to a questionnaire. These responses to the questionnaire indicated that Plaintiff suffered from a major depressive disorder, an anxiety disorder and an attention deficit disorder with hyperactivity. Tr. 459. Dr. Myers findings also included "chronic persistent irritability . . . with episodes of depression and sadness." Tr. 460. Dr. Myers opined that Plaintiff's "emotional lability, irritability, and anxiety" would interfere with his work performance and would create "marked" problems with social functioning, concentration and interaction with supervisors, co-workers and the public. *Id.* He also offered

the opinion that Plaintiff's mental condition would result in his missing work more than 3 days per month. *Id.* It is undisputed that if Plaintiff's condition resulted in 3 or more absences per month, Plaintiff would be disabled because there would not be jobs in significant numbers the national marketplace he could perform.[1] Tr. 53-54.

The record also contained an opinion provided by a non-examining and non-treating evaluator, Dr. Ronnie Ronin, a licensed psychologist. A pre-printed questionnaire was completed by Dr. Ronin on December 17, 2009, and concluded that while Plaintiff suffered from affective and anxiety disorders, neither of these disorders was severe. Tr. 374-387. Dr. Ronin's evaluation was performed 18 months before Plaintiff's alleged onset date for disability (June 9, 2011) and prior to the period in which Dr. Myers treated Plaintiff. Consequently, Dr. Ronin did not have the benefit of Dr. Myers' findings or opinions at the time he prepared his report. The only mental health assessments in the record that were performed after Plaintiff's alleged onset date were prepared by Dr. Myers.

The ALJ gave "limited weight" to the opinions of Dr. Myers. An office evaluation of July 28, 2011, prepared after Dr. Myers' first office visit with Plaintiff, was given "limited weight" by the ALJ because "[w]hile the claimant does have a diagnosis of depression, it does not rise to the level of complete disability." Tr. 16. Dr. Myers' July 2011 evaluation did not state the opinion that Plaintiff was disabled (because of depression or any other reason), but did diagnose Plaintiff with major depressive disorder, recurrent; anxiety disorder, NOS; attention

---

[1] A Vocational Expert offered by the Commissioner testified at the administrative hearing that there would not be jobs for Plaintiff in significant number in the national marketplace if he missed work even two days per month because of his mental health issues. Tr. 53-4.

deficit disorder with hyperactivity, and "rule out bipolar disorder." Tr. 451. These diagnoses, made following Dr. Myers' initial evaluation of Plaintiff, were largely consistent with previous diagnoses of other treating physicians of Plaintiff. Tr. 361, 363, 365, 368-9, 451-2.

The ALJ also gave "limited weight" to Dr. Myers' response to a questionnaire of September 26, 2013, with the ALJ explaining that Dr. Myers' "examination notes are illegible" and the "claimant testified that he only saw the doctor for 15-60 minute appointments every 2-3 months." Tr. 17. The Plaintiff was asked by the ALJ at the administrative hearing about his limited number of appointments with Dr. Myers, and Plaintiff explained he had been unable to obtain more frequent treatment "because of my financial situation." Tr. 33.

The ALJ's stated reasons for rejecting the opinions of Plaintiff's treating specialist physician, Dr. Myers, presents real problems under the Treating Physician Rule. First, the disregarding of the opinions of a treating physician because his notes are illegible is not acceptable. The Commissioner is obligated to "consider all evidence available" from a claimant's medical record and "shall make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence." 42 U.S.C. § 423(d)(5)(B). This includes the duty of the ALJ to develop a "full and fair record" to correct gaps or deficiencies in the record where "such evidence is necessary to a fair determination of the claim." *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991); *Hannah Walker v. Colvin*, C.A. No. 2:12-61-PVC, 2013 WL 5320664 at *15 (N.D. Ind. 2013); *Rivera v. Astrue*, C.A. No. 10-4324-RJD, 2012 WL 3614323 at *12 (E.D.N.Y. 2012) (recognizing that while the ALJ's duty to complete the record is heightened when the claimant is *pro se*, "the duty exists when the claimant is represented by counsel"); *Washington v. Astrue*, C.A. No. 3:08-2631-DCN, 2010 WL 3023048 at *3 (D.S.C. 2012). In a

situation where portions of the record of Plaintiff's treating physician are not legible, the ALJ, at a minimum, has a duty to reach out to the treating physician to determine if he can obtain a legible copy of the record or assistance in reading the handwritten entries. Simply electing to ignore the treating physician's opinions because the office records are not all legible does not satisfy the requirements of the Treating Physician Rule to "evaluate every medical opinion we receive." § 404.1527(c).

Second, disregarding the opinions of a treating physician because the claimant did not have more regular office appointments requires some determination as to why the appointments were not more frequent. Plaintiff asserts that he could not afford more regular treatment. Tr. 33. To the extent that is true, it is well settled that a "claimant may not be penalized for failing to seek treatment [he] cannot afford" because "it flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986).

Further, the Court finds it necessary to address a comment by the ALJ in the course of the administrative hearing that he is "not a fan of a check off list" and does not put "as much weight on the questionnaire," preferring instead opinions expressed in office records. Tr. 35-36. The issue of whether a treating physician's opinions are supported in the record is certainly one of the standards to be considered under the Treating Physician Rule. § 404.1527(c)(3). The Commissioner is obligated, however, to "evaluate every medical opinion we receive," and it is inappropriate to disregard an opinion of a treating physician simply because the ALJ does not approve of the form upon which the opinion is expressed. Further, there appears to be something of a double standard here, where the opinions of a non-examining and non-treating expert

provided on a check list type form was accepted by the ALJ without complaint, while the opinions of Dr. Myers offered on a pre-printed check list type form were looked at with skepticism. *See* Tr. 35-36, 374-387, 459-63. In an ideal world, all medical opinions would be offered in detailed reports with extensive narratives, but the truth is that medical opinions in Social Security cases are regularly offered on pre-printed, checklist type forms, and the Commissioner pledges to consider *all* opinions. On remand, the ALJ should evaluate the opinions offered by Dr. Myers under the standards of the Treating Physician Rule regardless of the document in which those opinions were offered.

## Conclusion

Based on the foregoing, the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the agency for further action consistent with this order pursuant to Sentence Four of 42 U.S.C. 405(g).

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
March 23, 2016